UNITED STATES DISTRICT COURT
DISTRICT OF HAWAI`I

MELECIO P. CUARESMA,

        Plaintiff,

    v.

LOCKHEED MARTIN CORPORATION,
JOHN DOES 1-5, JANE DOES 1-5,
DOE CORPORATIONS 1-5, DOE LLCS
1-5, DOE PARTNERSHIPS 1-5, DOE
NON-PROFIT ORGANIZATIONS 1-5,
and DOE GOVERNMENTAL AGENCIES 1-
5;

        Defendants.

CIV. NO. 17-00324 ACK-RT

## ORDER GRANTING DEFENDANT LOCKHEED MARTIN CORPORATION'S MOTION FOR SUMMARY JUDGMENT

For the reasons discussed below, Defendant Lockheed

Martin Corporation's Motion for Summary Judgment is:

1.    GRANTED as to Plaintiff Cuaresma's national
origin discrimination claims because Plaintiff
Cuaresma has abandoned those claims and agrees
that summary judgment is appropriate;

2.    GRANTED as to Plaintiff Cuaresma's age
discrimination claims because Plaintiff Cuaresma
has abandoned those claims and has failed to
establish a prima facie case for age
discrimination;

3.    GRANTED as to Plaintiff Cuaresma's Hawai`i
Whistleblowers' Protection Act retaliation claim
because Plaintiff Cuaresma has failed to
establish the causal connection element of a
prima facie HWPA retaliation claim.

**PROCEDURAL BACKGROUND**

On February 13, 2017, Plaintiff Melecio P. Cuaresma ("Plaintiff Cuaresma") filed a Complaint in the Circuit Court of the First Circuit, State of Hawai`i, in which he asserts two counts against his former employer, Defendant Lockheed Martin Corporation ("Defendant Lockheed"), and a series of Doe defendants. ECF No. 1-2. The first count alleges that Plaintiff Cuaresma was discriminated against because of his national origin (Filipino) and age (62 at the time of the alleged discrimination)[1] [2] in violation of Hawai`i Revised Statutes ("H.R.S.") § 378-2; the second count alleges that Plaintiff Cuaresma was terminated in retaliation for engaging in a protected activity in violation of the Hawai`i Whistleblowers' Protection Act ("HWPA"), H.R.S. § 378-62. Compl. ¶¶ 11-16. Prior to filing his Complaint, Plaintiff Cuaresma filed Charges of Discrimination with the Hawai`i Civil Rights Commission and

---

[1] Plaintiff Cuaresma's Declaration states that he was born on November 4, 1952 and was 63 years old at the time of the alleged discrimination. ECF No. 41-1, Declaration of Melecio P. Cuaresma, Jr. ("Pl. Decl.") ¶ 3. Defendant Lockheed's Concise Statement of Facts states that Plaintiff Cuaresma was 62 years old when he was terminated in July 2015. Def. CSF ¶ 2. Based on the birthdate set forth in Plaintiff Cuaresma's Declaration, it appears that Plaintiff Cuaresma was, indeed, 62 years old at the time of the alleged discrimination.
[2] Remarkably, Plaintiff Cuaresma was 57 years old at the time he was hired on July 19, 2010. Pl. Decl. ¶ 2. This raises serious questions regarding his having brought an age discrimination claim.

with the Equal Employment Opportunity Commission.  He received

right-to-sue letters from both agencies on November 15, 2016 and

on December 6, 2016, respectively, thereby exhausting his

administrative remedies.  Id. at ¶¶ 7-8.  On July 11, 2017,

Defendant Lockheed timely filed a Notice of Removal pursuant to

28 U.S.C. § 1446.  ECF No. 1.  Removal is proper pursuant to 28

U.S.C. §§ 1332 and 1441.

On September 12, 2018, Defendant Lockheed filed a

Motion for Summary Judgment ("Mot."), a Memorandum in Support of

Motion ("Mem.") and a Concise Statement of Facts ("Def. CSF").

ECF Nos. 28, 28-1, 29.  On December 24, 2018, Plaintiff Cuaresma

filed his Concise Statement of Facts ("Pl. CSF") in opposition

to Defendant Lockheed's Concise Statement of Facts, and on

December 25, 2018, Plaintiff Cuaresma filed his Memorandum in

Opposition to Defendant Lockheed's Motion ("Opp.").[3] [4] ECF Nos.

---

[3] The Court notes that Plaintiff Cuaresma's Memorandum in
Opposition and Concise Statement of Facts were not filed
contemporaneously as Local Rule 56.1(b) requires.  Counsel for
Plaintiff Cuaresma also failed to timely submit two courtesy
copies of these filings as Local Rule 7.7 requires, and
neglected to tab and attach a copy of the Notice of Electronic
Filing to the courtesy copies that were finally submitted.  The
Court directs counsel for Plaintiff Cuaresma to review Local
Rules 56.1 and 7.7 and ensure that future filings are strictly
compliant with the Local Rules.
[4] The Court notes that Plaintiff Cuaresma's Concise Statement of
Facts states that he does not oppose the facts numbered 1-31 as
set forth in Defendant Lockheed's Concise Statement of Facts.
Pl. CSF at p. 1.  Accordingly, those facts are deemed admitted.
See Local Rule 56.1(g).

41, 42.  On December 31, 2018, Defendant Lockheed filed its

Reply.  ECF No. 43.  The Court held a Hearing on Defendant

Lockheed's Motion on January 15, 2019 at 11:00 a.m.

## FACTUAL BACKGROUND

Defendant Lockheed operates a facility on a Navy base

at Ewa Beach that builds and rebuilds torpedoes.  Def. CSF ¶ 1;

Mem. at 3.  Defendant Lockheed hired Plaintiff Cuaresma as a

custodian/janitor at its facility on July 19, 2010.  Def. CSF ¶

1; Compl. at ¶ 10(a).  Because Defendant Lockheed's facility is

located on a Navy base, Plaintiff Cuaresma was required to

undergo a background check and obtain government clearance prior

to being employed.  Def. CSF ¶ 1;  Mem. at 4.

Plaintiff Cuaresma principally complains that he was

terminated on July 17, 2015 in retaliation for reporting an

unsafe work condition to his union, which in turn notified

Defendant Lockheed of Plaintiff Cuaresma's report.  Pl. Decl. at

¶¶ 9-14.  Plaintiff Cuaresma also alleges that he was terminated

due to his Filipino national origin and age.  Id.  Plaintiff

Cuaresma further complains that on June 19, 2015, he was

allegedly denied a promotion to the Engineering Technician I

("Tech. I") position while other younger, non-Filipino employees

were hired to fill those positions.  Id. at ¶ 6.  Plaintiff

Cuaresma also alleges that on June 30, 2015, he was suspended

because he left his backpack in an area where doing so was

forbidden, while other younger, non-Filipino employees who did the same were not similarly suspended.  Id. at ¶ 7.  The specific facts relevant to each of these events are set forth below.

**I.  Plaintiff Cuaresma's Work Performance History and the Tech. I Position**

As the sole custodian/janitor for Defendant Lockheed, Plaintiff Cuaresma was responsible for cleaning Defendant Lockheed's building and its smoke shack.  Def. CSF ¶ 5; ECF No. 29-2, Deposition of Melecio P. Cuaresma, Jr. ("Pl. Dep.") 35:18-36:8.  Plaintiff Cuaresma's responsibilities included cleaning restrooms, offices, breakrooms and showers.  Def. CSF ¶ 5; Pl. Dep. at 36:12-20.  Plaintiff Cuaresma was also required to take out trash, clean tables, mop and wax floors, and clean refrigerators and microwaves.  Def. CSF ¶ 5; Pl. Dep. at 37:1-21.  Plaintiff Cuaresma's direct supervisor was Ralph "Jim" Kirk ("Mr. Kirk"), who reported to Richard J. Dunn ("Mr. Dunn"), Defendant Lockheed's General Manager.  Def. CSF ¶ 4.

The record demonstrates that Plaintiff Cuaresma often had difficulty cleaning to the level that his position required, and that he was repeatedly trained and counseled on his cleaning ability throughout the course of his employment.  See Def. CSF ¶¶ 6, 8-17, 19-20, 23-24, 26-29, 31.  The record indicates that between April 16, 2012 and June 17, 2015, Plaintiff Cuaresma was

provided with specific cleaning schedules and plans on at least
three occasions, which were designed help him clean more
effectively and better manage his cleaning duties.  See ECF No.
29-3, Declaration of Ralph J. Kirk, Jr. ("Kirk Decl.") ¶¶ 5, 13,
20.  Plaintiff was also given instructions and/or demonstrations
on how to properly clean on at least fourteen occasions during
that same time period.  See id. ¶¶ 8-13, 16-19; ECF No. 29-4,
Declaration of Timothy Ahern ("Ahern Decl.") ¶¶ 10-11, 13-14.
Plaintiff Cuaresma received several formal written and verbal
disciplinary warnings regarding the inadequacy of his job
performance.  Plaintiff Cuaresma received written warnings on
July 31, 2012 and on April 4, 2014.  Def. CSF ¶¶ 15, 28; Ahern
Decl. ¶¶ 5, 9; ECF Nos. 29-44, 29-47, Exhs. R, GG.  Plaintiff
Cuaresma received verbal warnings on July 11, 2012 and on April
15, 2013.  Def. CSF ¶ 13; Ahern Decl. ¶ 3; Kirk Decl. ¶ 23; ECF
No. 29-42, Exh. M.  Plaintiff Cuaresma does not object to any of
the aforesaid facts.  Pl. CSF. at p. 1.  Accordingly, pursuant
to Local Rule 56.1(g),[5] the aforesaid facts are deemed admitted.

---

[5] Local Rule 56.1(g) reads "Admission of Material Facts.  For
purposes of a motion for summary judgment, material facts set
forth in the moving party's concise statement will be deemed
admitted unless controverted by a separate concise statement of
the opposing party."

On May 27, 2015, Plaintiff Cuaresma applied for a Tech. I position.[6]  Def. CSF ¶ 36; Pl. Dep. 123:12-14.  The Tech. I position involves working with dangerous ammunition, chemicals and torpedo fuel; it also requires the ability to follow instructions, computer literacy, and a high level of situational awareness.  Def. CSF ¶¶ 36-37; ECF No. 29-26, Declaration of Richard Dunn ("Dunn Decl.") ¶¶ 26-27, 31.  On June 19, 2015, Plaintiff Cuaresma learned that he was not selected for the position.  Def. CSF ¶ 37; Dunn Decl. ¶¶ 28-30; Pl. Decl. ¶ 6.

## II.      Plaintiff Cuaresma's Suspension

On October 1, 2012, Plaintiff Cuaresma left his backpack in a breakroom rather than storing it in a locker as was required by a government policy.  Def. CSF ¶ 18; Kirk Decl. ¶ 17; Pl. Dep. 205:7-206:2.  Upon finding the backpack, Mr. Kirk instructed Plaintiff Cuaresma that he needed to comply with the government's policy and store his backpack in a locker.  Def. CSF ¶ 18; Kirk Decl. ¶ 17; Pl. Dep. 205:7-206:2; ECF No. 29-15, Exh. U.  On June 25, 2013, Plaintiff Cuaresma again left his backpack in the breakroom, and Mr. Kirk gave him a written warning for violating the backpack policy for the second time.

---

[6] Plaintiff Cuaresma appears to have applied for the same position on numerous other occasions during the course of his employment with Defendant Lockheed.  Pl. Dep. 123:3-25. However, the Complaint only features allegations related to Plaintiff Cuaresma's non-selection for the Tech. I position on one occasion.  See Compl. ¶ 10(e)

Def. CSF ¶ 25; Kirk Decl. ¶ 25; ECF No. 29-22, Exh. BB.

Plaintiff Cuaresma violated the backpack policy for a third time on July 31, 2013, and on August 2, 2013, he received his second written warning for having done so.  Def. CSF ¶ 25; Ahern Decl. ¶ 7; Pl. Dep. 208:5-9; ECF No. 29-46, Exh. CC.  On June 9, 2015, Plaintiff Cuaresma received an Employee Performance Notice because he violated the backpack policy for a fourth time on June 4, 2015.  Def. CSF ¶ 30; Ahern Decl. ¶ 12; ECF No. 29-50, Exh. KK.  Plaintiff Cuaresma was suspended from his employment for three days beginning on June 10, 2015 as a result of this fourth violation.  Id.  Plaintiff Cuaresma does not object to any of the facts related to his suspension, so the aforesaid facts are deemed admitted.  See Pl. CSF at p. 1; L.R. 56.1(g).

## III.    Plaintiff Cuaresma's Termination

The following events precipitated Plaintiff Cuaresma's termination.  At the end of the workday on July 13, 2015, Plaintiff Cuaresma left a wet cleaning brush pad on an active electrical transformer in Defendant Lockheed's facility, which created a safety hazard.  Def. CSF ¶¶ 32-33; Dunn Decl. ¶ 14.  Mr. Dunn reported this incident to the relevant Navy contracting officer.  Def. CSF ¶¶ 32-33; Dunn Decl. at ¶ 15; ECF No. 29-35, Exh. PP.  The Navy subsequently revoked Plaintiff Cuaresma's access to Defendant Lockheed's facility, and Plaintiff Cuaresma was asked to leave the facility on July 14, 2015.  Def. CSF ¶

33; Dunn Decl. ¶ 16; Pl. Decl. ¶ 8.  Plaintiff Cuaresma submits

that after he was asked to leave Defendant Lockheed's facility

on July 14, 2015, he reported an unsafe work condition to his

union—the lack of any signage indicating that the transformer on

which he left a wet cleaning brush pad was an electrical hazard.

Pl. Decl. ¶ 10.[7]

On the morning of July 15, 2015, Mr. Dunn decided to

terminate Plaintiff Cuaresma's employment.  Def. CSF ¶ 33; Dunn.

Decl. ¶ 17; ECF No. 43-1, Second Declaration of Richard Dunn

("Dunn Decl. II") ¶ 3; ECF No. 29-36, Exh. QQ.  That same day at

11:33 a.m. Hawai`i time, Maria Lillis of Plaintiff Cuaresma's

union emailed Virginia Lee ("Ms. Lee"), Defendant Lockheed's

human resources representative, and inquired whether Plaintiff

Cuaresma had been terminated on July 14, 2015.  Def. CSF ¶ 34;

Dunn Decl. ¶ 18; see Exh. RR.  Ms. Lee responded to Ms. Lillis's

email ten minutes later, with copy to Billy Panui ("Mr. Panui"),

another union representative, and stated that she had emailed

Mr. Panui earlier that morning to inform him that Plaintiff

Cuaresma was not terminated on July 14, 2015, but that his

---

[7] Plaintiff Cuaresma has not submitted any evidence corroborating
these statements from his Declaration.  An email submitted by
Defendant Lockheed indicates that at approximately 1:45 p.m.
Hawai`i time on July 14, 2015, Plaintiff Cuaresma told one of
his union representatives, Maria Lillis ("Ms. Lillis"), that he
believed he had been terminated; however, the email does not
indicate that Plaintiff Cuaresma reported an unsafe work
condition.  See ECF No. 29-37, Exh. RR.

termination would be effective on July 17, 2015. Def. CSF ¶ 34;
Dunn Decl. ¶ 18; Exh. RR. Later on July 15, 2015, at 1:08 p.m.
Hawai`i time,[8] Ms. Lee sent an internal email requesting
preparation of a final paycheck for Plaintiff Cuaresma with an
official termination date of July 17, 2015. Def. CSF ¶ 34; Dunn
Decl. ¶ 18; ECF No. 29-38, Exh. SS.

Just under two hours after Ms. Lee requested Plaintiff
Cuaresma's final paycheck, Mr. Panui sent an email to Mr. Dunn
at 2:53 p.m. Hawai`i time requesting further clarification on
whether Plaintiff Cuaresma had been fired. Mr. Panui also asked
for permission to access Defendant Lockheed's facilities in
order to conduct a union investigation into the electrical
transformer incident. Pl. Decl. ¶ 10; ECF No. 41-10, Exh. 9.
On the evening of July 15, 2015, at 6:26 p.m., Mr. Dunn
memorialized the decision he had made that morning to terminate
Plaintiff Cuaresma by inputting a formal termination request
into Defendant Lockheed's internal human resources system. Def.

---

[8] Although the timestamp on Ms. Lee's email indicates that she
sent her email at 4:08 p.m., the email also indicates that Ms.
Lee is based at the Vandenberg Air Force Base which is located
in California. See Exh. SS. During the month of July,
California observes Pacific Daylight Time, while Hawai`i
observes Hawai`i Standard Time. Pacific Daylight Time is three
hours ahead of Hawai`i Standard Time. Pursuant to Federal Rule
of Evidence 201(b)(2), the Court can take judicial notice of the
world's time zones. See e.g., Papenthien v. Papenthien, 16 F.
Supp. 2d 1235, 1241 n. 4 (S.D. Cal. 1998). Accordingly, Ms.
Lee's email was sent at 1:08 p.m. Hawai`i time.

CSF ¶ 33; Dunn Decl. ¶¶ 17-18; Exh. QQ. Ms. Lee approved the termination request a few minutes later at 6:34 p.m. Id.

On July 16, 2015, Defendant Lockheed received notice of an Occupational Safety and Health Administration ("OSHA") complaint regarding the electrical transformer incident, which Plaintiff Cuaresma's union had filed on his behalf earlier that same day. Dunn Decl. ¶ 20; ECF No. 29-40, Exh. UU. On July 17, 2015, Mr. Dunn sent a letter to Plaintiff Cuaresma formally notifying him that he was terminated. Def. CSF ¶ 34; Dunn. Decl. ¶ 19; ECF No. 29-39, Exh. TT. The letter states that Plaintiff Cuaresma was terminated due to his "unsatisfactory level of situational awareness which create[d] a clear safety/security risk as [he] demonstrated most recently by placing wet cleaning materials on top and in front of active electrical systems." Exh. TT.

At the Hearing held on January 15, 2019, counsel for Plaintiff Cuaresma stated that his client had no reason to dispute the timing of the aforesaid events as corroborated by the various emails in the record.

## STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56(a) mandates summary judgment "against

a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find

for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (internal citation and quotation omitted)).

## DISCUSSION

### I.    H.R.S. § 378-2 Claims (Count One)

Plaintiff Cuaresma alleges that he was subject to discrimination and terminated from his employment on the basis of his Filipino national origin and age in violation of H.R.S. § 378-2. See Compl. at ¶ 10(c)-(i). H.R.S. § 378-2 states in relevant part:

> (a) It shall be an unlawful discriminatory practice:
> (1) Because of race, sex including gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, arrest and court record, or domestic or sexual violence victim status .
> . . :
> (A) For an employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate

- 13 -

against any individual in compensation or in
                    the terms, conditions, or privileges of
                    employment . . . .

H.R.S. § 378-2(a)(1)(A).

        The Hawai`i Supreme Court has adopted a modified

version of the McDonnell Douglas burden-shifting framework,

which federal courts use in the context of Title VII and Age

Discrimination in Employment Act claims, when analyzing

discrimination claims involving intentional discrimination on

the basis of membership in a protected class under H.R.S. § 378-

2.  See Shoppe v. Gucci Am., Inc., 14 P.3d 1049, 1058-60, 94

Haw. 368, 377-79 (Haw. 2000); Furukawa v. Honolulu Zoological

Soc'y, 936 P.2d 643, 648, 85 Haw. 7, 12 (Haw. 1997); see also

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

        First, the plaintiff must establish a prima facie case

of discrimination.  Shoppe, 94 Haw. at 378.  Second, once the

plaintiff establishes a prima facie case of discrimination, "the

burden of production shifts to the defendant to articulate a

legitimate, nondiscriminatory reason for the adverse employment

action."  Shoppe, 94 Haw. at 378.  "The employer's explanation

must be in the form of admissible evidence and must clearly set

forth the reasons that, if believed by a trier of fact, would

support a finding that unlawful discrimination was not the cause

of the challenged employment action."  Id.  Last, if the

employer rebuts the prima facie case, the burden shifts back to

the plaintiff to "demonstrate that the defendant's proffered reasons were 'pretextual.'" Id. at 379 (quoting McDonnell Douglas, 411 U.S. at 804). "A [p]laintiff may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Shoppe, 94 Haw. at 379 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 at 254-55 (1981)). Ultimately, the burden of persuasion remains with the plaintiff at all times. Id. at 378-79; Furukawa, 85 Haw. at 12-13.

The Court addresses Plaintiff Cuaresma's national origin discrimination claims and age discrimination claims in turn.

## A.   National Origin Discrimination Claims

Defendant Lockheed argues that the Court should grant summary judgment on Plaintiff Cuaresma's claim that he was terminated on the basis of his Filipino national origin because Plaintiff Cuaresma admitted during his deposition that he did not believe he was terminated on that basis. Mem. at 2, 29-30; Pl. Dep. 198:13-24. Although Plaintiff Cuaresma's Complaint does not allege that Defendant Lockheed failed to promote him on the basis of his national origin, Plaintiff Cuaresma expressed during his deposition his belief that he was not promoted because of his Filipino national origin. See Pl. Dep. 203:21-

- 15 -

204:13.  Plaintiff Cuaresma also stated that his suspension may have been because of his national origin.  <u>See</u> Pl. Dep. 211:23-212:3.

However, Plaintiff Cuaresma's Memorandum in Opposition states that because "Plaintiff admitted during his deposition that he was not discriminated against because of his Filipino ancestry/national origin, Plaintiff agrees that Defendant Lockheed's motion should be granted as to those claims."  Opp. at 3.  At the Hearing on Defendant Lockheed's Motion, counsel for Plaintiff Cuaresma reiterated that his client did not wish to pursue his national origin discrimination claims.  Accordingly, because Plaintiff Cuaresma has explicitly abandoned his national origin discrimination claims, Defendant Lockheed's Motion is GRANTED as to those claims.

**B.   Age Discrimination Claims**

Plaintiff Cuaresma alleges that Defendant Lockheed suspended, failed to promote, and ultimately terminated him because of his age.  Defendant Lockheed argues that the Court should grant summary judgment in its favor on each of these claims because Plaintiff Cuaresma has (1) failed to establish a prima facie case of discrimination; (2) Defendant Lockheed had legitimate, non-discriminatory reasons for taking adverse employment actions against Plaintiff Cuaresma; and (3) Plaintiff Cuaresma has not established that Defendant Lockheed's reasons

were pretextual.  See Mem. at 25-29, 32-34.  Plaintiff does not concede that his age discrimination claims should be dismissed summarily, stating instead that he "defer[s] to the Court" with respect to those claims.  Opp. at 4.  At the Hearing on Defendant Lockheed's Motion, counsel for Plaintiff Cuaresma stated that his client did not wish to pursue his age discrimination claims.

When a plaintiff does not address a claim or otherwise respond to the defendant's arguments on summary judgment, the plaintiff is deemed to have abandoned the claim and entry of summary judgment is appropriate.  Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008) (citing Jenkens v. Cty. of Riverside, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)).

Here, "Plaintiff does not present any argument in opposition to Defendant Lockheed's motion on the age discrimination claim . . . ."  Opp. at 4.  Accordingly, Plaintiff Cuaresma has failed to show that there is a genuine issue for trial, and therefore the Court finds that summary judgment in Defendant Lockheed's favor is appropriate.  See, e.g., Tatum v. DaVita Healthcare Partners, Inc., No. CV-16-00185-PHX-SPL, 2018 WL 1586753, at *1 (D. Ariz. Mar. 31, 2018); Anderson v. City and Cty. of San Francisco, 169 F. Supp. 3d 995, 1011 n. 6 (N.D. Cal. 2016); Scharf v. Trabucco, No. 3:14-CV-8183-HRH, 2016 WL 3124621, at *1 (D. Ariz. Jun. 3, 2016).

Notwithstanding the foregoing, the Court holds in the alternative that summary judgment in Defendant Lockheed's favor is appropriate because Plaintiff Cuaresma has failed to establish prima facie claims of age discrimination. The Court addresses the merits of these claims because Plaintiff Cuaresma did not expressly concede that summary judgment should be granted in Defendant Lockheed's favor (as he did with respect to his national origin discrimination claims), choosing to instead "defer to the Court." Opp. at 4.

To establish a prima facie case of discrimination in violation of H.R.S. § 378-2, a plaintiff must demonstrate, by a preponderance of the evidence, the following four elements: "(1) that plaintiff is a member of a protected class; (2) that plaintiff is qualified for the position for which plaintiff has applied or from which plaintiff has been discharged; (3) that plaintiff has suffered some adverse employment action, such as a discharge; and (4) that the position still exists." Adams v. CDM Media USA, Inc., 346 P.3d 70, 82, 135 Haw. 1, 13 (Haw. 2015) (citing Shoppe 94 Haw. at 378-79).

In articulating the elements required to establish a prima facie case of discrimination under H.R.S. § 378-2, Defendant Lockheed states that the fourth element requires Plaintiff Cuaresma to demonstrate that "similarly situated individuals outside his protected class were treated more

favorably." Mem. at 20; see Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010). However, Hawai`i law does not actually require the plaintiff to demonstrate that similarly situated individuals outside of its protected class were treated more favorably. Instead, the fourth element of the modified version of the McDonnell Douglas prima facie analysis used to analyze H.R.S. § 378-2 claims requires the plaintiff to demonstrate that "the position still exists." Adams, 135 Haw. at 13 (citing Shoppe 94 Haw. at 378-79); Simmons v. Aqua Hotels and Resorts, Inc., 310 P.3d 1026, 1031, 130 Haw. 325, 330 (Haw. Ct. App. 2013).

Accordingly, the Court disregards Defendant Lockheed's arguments regarding Plaintiff Cuaresma's failure to produce evidence establishing that similarly situated individuals outside of his protected class were treated more favorably.

The parties do not appear to dispute that Plaintiff Cuaresma has met his burden with respect to the first, third, and fourth elements of a prima facie age discrimination case. The only evidence that Plaintiff Cuaresma proffers in support of his age discrimination claims is his Declaration. Opp. at 4.

Plaintiff Cuaresma has not met his burden in establishing a prima facie case for age discrimination with respect to any of the adverse employment actions of which he complains because he has not established that he was qualified

for the Tech. I position that he applied for, or for the
custodian/janitor position from which he was suspended and
terminated.  The Court first addresses Plaintiff Cuaresma's
failure to promote claim, and then turns to the suspension and
termination claims.

### i. Failure to Promote Claim

The Tech. I position involves tasks related to
maintaining torpedoes, including working with live ammunitions
and hazardous chemicals and fuels.  Def. CSF ¶ 37; Dunn Decl. at
¶ 26.  The position requires a high level of situational
awareness, high mechanical aptitude, good verbal and written
communication skills, and the ability to follow specific
instructions.  Def. CSF ¶ 36; Dunn Decl. at ¶ 27.  The record
features significant evidence of Plaintiff Cuaresma's inability
to perform his custodian/janitor job in a satisfactory manner,
which the Court has set forth supra.  Specifically, the record
indicates that Plaintiff Cuaresma was unable to adhere to simple
cleaning schedules and processes, repeatedly violated company
policies, was unable to follow basic instructions, and exhibited
a lack of situational awareness.  Dunn Decl. at ¶ 29.  For these
reasons, Mr. Dunn believed that Plaintiff Cuaresma was not
qualified for the Tech. I position and did not promote him.
Def. CSF ¶ 37; Dunn Decl. ¶¶ 28-30.

Plaintiff Cuaresma has set forth no evidence in rebuttal to establish that he was qualified for the Tech. I position other than his statement that "[p]rior to and after termination, I was fully capable of doing my job duties with Defendant."  Pl. Decl. at ¶ 14.  Accordingly, Plaintiff Cuaresma has failed to "come forward with specific facts" showing that there is a genuine triable issue as to his qualifications for the Tech. I position.  See Matsushita Indus. Elec. Co., 475 U.S. at 247-48.  As the Court has already noted, Plaintiff Cuaresma does not object to the facts set forth in Defendant Lockheed's Concise Statement of Facts regarding his job performance.  Pl. CSF at p. 1.  Plaintiff Cuaresma's failure to object to any of the aforesaid facts means that they are deemed admitted pursuant to Local Rule 56.1(f).

Because Plaintiff Cuaresma has failed to provide evidence establishing that he was qualified for the Tech. I position, no reasonable factfinder could conclude that he has established a prima facie case for an age discrimination failure to promote claim.  For this reason, the Court finds that Defendant Lockheed is entitled to judgment as a matter of law.

### ii.  Suspension and Termination Claims

Plaintiff Cuaresma has similarly failed to establish prima facie cases with respect to the other adverse employment actions that he complains of—his suspension and termination.  In

order to establish prima facie cases that these adverse

employment actions were taken because of his age, Plaintiff

Cuaresma must show that he was qualified for the

custodian/janitor position from which he was suspended and

ultimately terminated.  Because the analysis is the same for

both claims, the Court considers these claims together.

As the Court has discussed at length, Defendant

Lockheed has provided a detailed account of Plaintiff Cuaresma's

poor performance as a custodian/janitor and history of workplace

infractions, which is uncontested.  Because Plaintiff Cuaresma

has not provided any evidence that he was qualified for the

custodian/janitor position, no reasonable factfinder could

conclude that he has established prima facie cases for age

discrimination claims with respect to his suspension and

termination.  Accordingly, the Court finds that Defendant

Lockheed is entitled to judgment as a matter of law.

## II.    HWPA Retaliation Claim (Count Two)

Plaintiff Cuaresma alleges that he was terminated

after his union informed Defendant Lockheed that Plaintiff

Cuaresma reported an unsafe work condition in violation of the

HWPA.  Pl. Decl. ¶ 9; Opp. at 5.  Defendant Lockheed argues,

inter alia, that the Court should grant summary judgment in its

favor because Defendant Lockheed decided to terminate Plaintiff

Cuaresma before learning of the report that he made to his

union.  Mem. at 36.

> The HWPA states in relevant part:
>
> An employer shall not discharge, threaten,
> or otherwise discriminate against an
> employee regarding the employee's
> compensation, terms, conditions, location,
> or privileges of employment because:
> (1) The employee, or a person acting on
> behalf of the employee, reports or is about
> to report to the employer, or reports or is
> about to report to a public body,[9] verbally
> or in writing, a violation or a suspected
> violation of:
> (A) A law, rule, ordinance, or regulation
> adopted pursuant to law of this State, a
> political subdivision of this State, or the
> United States . . . .

H.R.S. § 378-62(1)(A).

Under Hawai`i law, three elements are required in

order to assert a prima facie HWPA claim.  Griffin v. JTSI,

Inc., 654 F. Supp. 2d 1122, 1130 (D. Haw. 2008) (citing Crosby

v. State Dep't of Budget & Fin., 876 P.2d 1300, 1310, 76 Haw.

332, 342 (Haw. 1994)).  First, the plaintiff must establish that

it engaged in protected conduct as defined by the HWPA.  Id. at

1131.  Next, the plaintiff must show that the employer took some

---

[9] The Court notes that HWPA's definition of "public body" does
not include a labor union.  See H.R.S. § 378-61.  Accordingly,
Plaintiff Cuaresma did not engage in a protected activity when
he reported an unsafe work condition to his union.  The
protected activity occurred when Plaintiff Cuaresma's union,
acting on his behalf, allegedly informed Defendant Lockheed of
the report.  See H.R.S. § 378-62(1).

adverse employment action against the plaintiff.  Id.  Finally,
the plaintiff must establish a causal connection between the
alleged retaliation and the whistleblowing.  Id.  Once the
plaintiff "make[s] a prima facie showing that his or her
protected conduct was a substantial or motivating factor in the
decision to terminate the [plaintiff]," the employer must "show
that the termination would have occurred regardless of the
protected activity."  Id. at 1131-32.

      Defendant Lockheed argues that Plaintiff Cuaresma
failed to establish an HWPA claim for two reasons.  First,
Defendant Lockheed argues that the email from Mr. Panui did not
constitute a protected activity under the HWPA because the email
did not actually inform Defendant Lockheed of Plaintiff's unsafe
work condition complaint; second, Defendant Lockheed argues that
even if the email reported a protected activity, the email was
not a substantial or motivating factor behind the termination
decision because Defendant Lockheed decided to terminate
Plaintiff Cuaresma's employment prior to receiving the email.
Reply at 4-5.  The parties do not dispute that Plaintiff
Cuaresma suffered an adverse employment action in the form of
Defendant Lockheed's decision to terminate his employment.
Thus, the parties' disputes are whether Plaintiff Cuaresma
engaged in a protected activity, and whether the causal

connection exists between the protected activity and alleged retaliation.

Regardless of whether the email from Mr. Panui to Mr. Dunn reported a protected activity, the Court finds that Plaintiff Cuaresma has failed to establish a causal connection between the email and his termination. Plaintiff Cuaresma argues that the Court should infer a causal connection between the alleged protected activity and the termination decision because both events occurred in close proximity with one another. Plaintiff Cuaresma also, at the Hearing on Defendant Lockheed's Motion, argued that the Court should deny summary judgment on the grounds that Defendant Lockheed did not follow the appropriate investigatory procedure after the electrical transformer incident occurred. The Court addresses each argument in turn.

## A.    Causal Connection

Plaintiff Cuaresma argues that the close proximity of time between Mr. Panui's email to Mr. Dunn and the decision to terminate Plaintiff Cuaresma creates a triable issue of fact with respect to the causal connection requirement of a prima facie HWPA claim. Opp. at 12-13.

"Causation may be inferred when an adverse employment action occurred 'fairly soon after the employee's protected expression.'" You v. Longs Drugs Stores California, LLC, 937 F.

Supp. 2d 1237, 1258 (D. Haw. 2013) (quoting Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)). "Causation sufficient to establish the . . . [causal link] element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." You, 937 F. Supp. 2d at 1258 (citing Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)). "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th. Cir. 1982) (citations omitted).

Plaintiff Cuaresma relies on another HWPA retaliatory termination case from this Court in support of his argument that the close proximity of time between the union's email and the decision to terminate Plaintiff Cuaresma creates a triable issue of fact. See Griffin v. JTSI, Inc., 654 F. Supp. 2d 1122 (D. Haw. 2008). Griffin is distinguishable from the instant case for the reasons that follow.

Griffin involved plaintiffs who reported numerous security violations to management on multiple occasions. 654 F. Supp. 2d at 1126-28. Management had knowledge of the complaints and responded with alleged indifference. Id. This Court

determined that the plaintiffs met their burden to establish a causal connection because plaintiffs "continued to report alleged security violations" during the two days prior to their termination, and therefore "[a] reasonable trier of fact could infer . . . that the Plaintiffs' persistent reporting . . . motivated their removal and termination by Defendant JTSI." Id. at 1133.

Griffin is distinguishable from the instant case because it was undisputed that the Defendant JTSI had knowledge of the plaintiffs' complaints prior to terminating the plaintiffs. Here, the parties dispute whether Defendant Lockheed had knowledge of Plaintiff Cuaresma's complaint prior making the decision to terminate plaintiff. Accordingly, the Court must address whether Defendant Lockheed had knowledge of Plaintiff Cuaresma's report prior to making the decision to terminate his employment.

The record makes clear that Mr. Dunn decided to terminate Plaintiff Cuaresma prior to receiving the email from Mr. Panui—that is, before he had knowledge of the alleged protected activity. Mr. Dunn states that on the morning of July 15, 2015, he made the decision to terminate Plaintiff Cuaresma's employment. Def. CSF ¶ 33; Dunn. Decl. ¶ 17; Dunn Decl. II ¶ 3; Exh. QQ. Mr. Dunn's declarations and his termination letter to Plaintiff Cuaresma establish, and the Court so finds, that Mr.

Dunn decided to terminate Plaintiff Cuaresma because the Navy revoked his authorization to access Defendant Lockheed's worksite, as well as his very poor work record, unsatisfactory level of situational awareness, and failure to take safety precautions.  Dunn Decls. dated Sept. 10, 2018 and Dec. 28, 2018; Exh. TT.

Defendant Lockheed has submitted two emails corroborating its position as to the timing of the termination decision, both of which were sent by Ms. Lee of Defendant Lockheed's human resources department on July 15, 2015.  Ms. Lee sent the first email to one of Plaintiff Cuaresma's union representatives at 11:43 a.m. Hawai`i time and informed the union that Plaintiff Cuaresma was not fired on July 14, 2015, but that his termination would be effective on July 17, 2015.  Def. CSF ¶ 34; Dunn. Decl. ¶ 18; Exh. RR.  Ms. Lee sent the second email internally at 1:08 p.m. Hawai`i time[10] and requested preparation of Plaintiff Cuaresma's final paycheck with a termination date of July 17, 2015.  Def. CSF ¶ 34; Dunn Decl. ¶ 18; Exh. SS.  The timestamps on these emails indicate that both were sent prior to 2:53 p.m., the time at which Mr. Panui emailed Mr. Dunn.  See Pl. CSF ¶ 40, Exh. 9.

---

[10] See footnote 6 supra regarding the timestamp on Ms. Lee's email.

Accordingly, the Court finds that even if Mr. Panui's email to Mr. Dunn constituted a protected activity, no reasonable factfinder could conclude that Mr. Dunn decided to terminate Plaintiff Cuaresma after receiving Mr. Panui's email. See You, 937 F. Supp. 2d at 1258 (rejecting the plaintiff's retaliatory termination claim because she failed to present any evidence in support of it, including that the person who fired her even knew about her complaints). Thus, Plaintiff Cuaresma has failed to make a prima facie showing that the alleged protected activity was a substantial or motivating factor in Defendant Lockheed's decision to terminate, and Defendant Lockheed is entitled to judgment as a matter of law.

The Court also notes that Plaintiff Cuaresma's union subsequently filed an OSHA complaint on his behalf on July 16, 2015, and that Defendant Lockheed was notified of the OSHA complaint on that same day. See Dunn Decl. ¶ 20; Exh. UU; Pl. Decl. ¶ 12. The parties do not dispute that the OSHA complaint constitutes a protected activity. However, it is also undisputed that Defendant Lockheed decided to terminate Plaintiff Cuaresma on July 15, 2015, and that Defendant Lockheed received notice of the OSHA complaint on July 16, 2015—after the termination decision was made. Accordingly, no causal connection exists between the OSHA complaint and the termination

decision and Defendant Lockheed is entitled to summary judgment notwithstanding Plaintiff Cuaresma's OSHA complaint.

**B.    Failure to Investigate the Electrical Transformer Incident**

At the Hearing on Defendant Lockheed's Motion, counsel for Plaintiff Cuaresma argued that Defendant Lockheed was not entitled to summary judgment because it failed to conduct a proper investigation into the electrical transformer incident that resulted in Plaintiff Cuaresma's termination.  Counsel for Plaintiff Cuaresma directed the Court's attention to Exhibit 10 of his Concise Statement of Facts, a copy of the July 17, 2015 termination letter.  Pl. Decl. ¶ 24; ECF No. 41-11, Exh. 10. Attached to the termination letter is a document that appears to be a copy of the grievance Plaintiff Cuaresma filed with his union.  Exh. 10 pp. 3-6.  The grievance describes the events surrounding Plaintiff Cuaresma's termination, and also alleges that Defendant Lockheed failed to properly investigate the electrical transformer incident and provide Plaintiff Cuaresma with a critique.  Id. at p. 4.  Apparently, Defendant Lockheed is required to investigate such incidents and critique the offending employee within five business days of the incident pursuant to the "IMA's QA manual." Id.  The grievance does not explain what the "IMA's QA manual" is; however, it appears that the acronym "IMA" is used to refer to Defendant Lockheed's

facility.  For example, the grievance alleges that in the
aftermath of the electrical transformer incident, Plaintiff
Cuaresma was "asked to leave the IMA and its premises."  Id.

The Court is sympathetic to Plaintiff Cuaresma's
situation and acknowledges that perhaps Defendant Lockheed did
not follow the appropriate internal procedure with respect to
the termination.  However, the question of whether Defendant
Lockheed adhered to an agreed-upon termination procedure is an
inquiry that is not relevant to a retaliation claim under the
HWPA.

## CONCLUSION

For the foregoing reasons, Defendant Lockheed's Motion
for Summary Judgment is:

1.    GRANTED as to Plaintiff Cuaresma's national
      origin discrimination claims because Plaintiff
      Cuaresma has abandoned those claims and agrees
      that summary judgment is appropriate;

2.    GRANTED as to Plaintiff Cuaresma's age
      discrimination claims because Plaintiff Cuaresma
      has abandoned those claims and has failed to
      establish a prima facie case for age
      discrimination;

3.    GRANTED as to Plaintiff Cuaresma's HWPA claim
      because Plaintiff Cuaresma has failed to
      establish the causal connection element of a
      prima facie HWPA retaliation claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, January 31, 2019.



_____
Alan C. Kay
Sr. United States District Judge

Cuaresma v. Lockheed Martin Corporation, et al., Civ. No. 17-00324 ACK-RT,
Order Granting Defendant Lockheed Martin Corporation's Motion for Summary
Judgment.